# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00298-COA

**C.D. PICKLE, JR. A/K/A CLANTON D. PICKLE, JR.**          APPELLANT

v.

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:                  01/13/2015
TRIAL JUDGE:                       HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:         LEFLORE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            C.D. PICKLE JR. (PRO SE)
ATTORNEYS FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                   BY:  ABBIE EASON KOONCE
                                        JASON L. DAVIS
                                        BILLY L. GORE
NATURE OF THE CASE:                CIVIL – POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:           MOTION FOR POST-CONVICTION
                                   RELIEF DISMISSED
DISPOSITION:                       AFFIRMED – 11/08/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## CONSOLIDATED WITH

## NO. 2015-CP-00824-COA

**CLANTON D. PICKLE, JR. A/K/A C.D. PICKLE,  JR.**          APPELLANT

v.

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:                  05/11/2015
TRIAL JUDGE:                       W. ASHLEY HINES
COURT FROM WHICH APPEALED:         LEFLORE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            C.D. PICKLE JR. (PRO SE)

ATTORNEYS FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
BY: JASON L. DAVIS
ABBIE EASON KOONCE
BILLY GORE

NATURE OF THE CASE:      CIVIL – POST-CONVICTION RELIEF

TRIAL COURT DISPOSITION:      MOTION FOR POST-CONVICTION
RELIEF DISMISSED WITH PREJUDICE

DISPOSITION:      AFFIRMED – 11/08/2016

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    This is a consolidated appeal stemming from two separate, yet related, PCR motions filed by C.D. Pickle Jr., based on the same conviction, in the Leflore County Circuit Court. Pickle appeals the circuit court's dismissal of his PCR motion, on remand from this Court, in cause number 2015-CP-00298-COA. He raises two issues: (1) whether the circuit court erred in applying a procedural bar to his PCR claim, as to the issue of the sufficiency of the evidence, after this Court had previously reversed the circuit court's finding that his motion was a successive writ and time-barred; and (2) whether the circuit court's findings—that he was not entitled to DNA testing or an exhumation of Mary Elizabeth Harthcock's body—are erroneous based on the prosecutor's misconduct at the evidentiary hearing, which violated his Fourteenth Amendment right to a fair evidentiary hearing.

¶2.    In a separate motion, Pickle appeals the circuit court's dismissal of his PCR motions in cause number 2015-CP-00824-COA. He raises one issue: (3) whether the dismissal of his PCR motion—with respect to an invalid jury instruction that failed to instruct the jury as to the elements of the underlying felony in his capital-murder case—was erroneous and a

2

violation of his rights to due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution, based on the doctrine of stare decisis.

¶3.     Finding no error, we affirm.

## FACTS

¶4.     The procedural history associated with this case is quite extensive, as Pickle has filed numerous motions before the circuit court, but that procedural history has been succinctly addressed by this Court, of which cause numbers 2015-CP-00298-COA and 2015-CP-00824-COA stem:

> In 1975, a Holmes County grand jury indicted Pickle for the capital murder of [Mary Elizabeth] Harthcock. The indictment charged that[,] on November 26, 1974, Pickle raped Harthcock and then killed her. A jury subsequently convicted Pickle and sentenced him to death. The Mississippi Supreme Court reversed Pickle's conviction in 1977 and remanded the case for a new trial. *Pickle v. State*, 345 So. 2d 623, 624 (Miss. 1977). His second trial was held in the Leflore County Circuit Court in 1978, where he was convicted again and sentenced to life in the custody of the MDOC. The record reflects that Pickle failed to perfect a direct appeal from that conviction.
>
> At some point between March or April 1978 and December 1981, Pickle petitioned the circuit court for permission to file an out-of-time appeal from his conviction, which the circuit court denied. On review, the Mississippi Supreme Court ordered an evidentiary hearing on the issue of whether Pickle had knowingly and intelligently waived his right to appeal. After the evidentiary hearing, the circuit court determined that Pickle had properly waived his right to appeal and, thus, again denied Pickle's request for an out-of-time appeal. The supreme court affirmed the denial in March 1982. *Pickle v. State*, 791 So. 2d 204, 205 (¶4) (Miss. 2001).
>
> In September 1997, Pickle filed a PCR motion again seeking an out-of-time appeal from his 1978 conviction and sentence. The circuit court denied the motion, explaining that it had already determined Pickle had knowingly and intelligently waived his right to appeal and that Pickle had raised no other issues that would entitle him to an out-of-time appeal. On appeal, the supreme court affirmed the circuit court's decision and held that Pickle was collaterally

3

estopped from seeking an out-of-time appeal because the issue of his entitlement to an out-of-time appeal had been adjudicated sixteen years before. In June 2004, Pickle filed another PCR motion in the circuit court, arguing that in his 1978 trial, the judge erroneously instructed the jury, and that his counsel was ineffective. Pickle further argued that he was innocent. The circuit court dismissed Pickle's PCR motion as time-barred and as successive-writ barred. The circuit court further held that Pickle was collaterally estopped from filing the PCR motion since the issue of his entitlement to an out-of-time appeal had already been determined. This Court affirmed the circuit court's decision in May 2006. *Pickle v. State*, 942 So. 2d 243, 247 (¶14) (Miss. Ct. App. 2006). Pickle then petitioned the supreme court for a writ of certiorari, which the court denied on November 20, 2006.

In June 2009, Pickle filed a [m]otion for [r]econsideration of [the] [c]ourt's [f]indings of [f]act, to [v]acate it's [sic] [i]nterlocutory [o]rder as [v]oid and to [s]upplement [p]ending [p]etition for [o]ut-of-[t]ime [a]ppeal [c]omplaint with [j]oinder of [a]ppeal [c]laims of [c]onstitutional [t]rial [e]rrors, [b]efore [f]inal [j]udgment [o]rder is [r]endered by this Court. On August 19, 2009, the circuit court denied and summarily dismissed all motions filed by Pickle. The circuit court barred Pickle from bringing any other action regarding his incarceration, either in federal or state court, absent immediate danger or physical injury. Pickle appealed. On appeal, this Court affirmed the circuit court's dismissal of Pickle's PCR motion and determination that the PCR motion was frivolous. *Pickle v. State*, 64 So. 3d 1009, 1012 (¶11) (Miss. Ct. App. 2010).

Significantly, the prior dismissals of Pickle's petitions, as set forth above, relied on the premise that no other issues would entitle him to relief under [Mississippi Code Annotated] section 99-39-5. Since that time, section 99-39-5 was amended to establish relief by providing an exception for DNA testing in cases where such testing and technology were not available at the time of trial. On September 15, 2011, Pickle filed another PCR motion wherein he claimed insufficient evidence existed to support his capital-murder conviction and, for the first time, requested DNA testing of the biological evidence collected during the murder investigation. On October 11, 2011, the circuit court summarily dismissed Pickle's motion as time-barred and successive-writ barred without holding an evidentiary hearing.

Pickle now appeals the dismissal of his PCR motion, arguing that his PCR motion is excepted from the successive-writ and time-bars. Pickle also argues that the circuit court erred in denying his request for DNA testing, claiming that an exception to the statutory bar exists under section 99-39-5(2). We remand this case to the circuit court for an evidentiary hearing to determine

4

whether a basis exists for the exception to the time-bar to grant relief pursuant to section 99-39-5(2)(a)(ii).

*Pickle v. State*, 115 So. 3d 896, 897-98 (¶¶3-9) (Miss. Ct. App. 2013). On remand, the circuit court held an evidentiary hearing, specifically addressing DNA testing; however, the court rejected Pickle's arguments and dismissed his PCR motion, resulting in this appeal.

DISCUSSION

¶5. "When reviewing a circuit court's dismissal of a PCR motion, this Court will only reverse a circuit court's factual findings if the findings are determined to be clearly erroneous. Issues of law receive a de novo review." *Id.* at (¶10).

¶6. We now turn our attention to the issues addressed in cause number 2015-CP-00298-COA.

I.     *Sufficiency of the Evidence*

¶7. On appeal in *Pickle v. State*, 115 So. 3d 896 (Miss. Ct. App. 2013), Pickle argued that the evidence used in his 1975 murder conviction was insufficient based on the testimony by the former assistant district attorney. He asserts that this Court did not affirm the dismissal of his PCR motion by the circuit court in that case and in fact reversed and remanded the case back to the circuit court. He further asserts that this Court agreed with his argument that the evidence was insufficient; therefore, the circuit court on remand erred by denying his PCR claim.

¶8. The State correctly responds that Pickle's arguments regarding sufficiency of the evidence were rejected by this Court as procedurally barred, and this Court only reversed for the limited purpose of addressing whether he was entitled to further DNA testing under

5

section 99-39-5. This Court's limited instruction on remand is evidenced by the opinion, which stated: "We remand this case to the circuit court for an evidentiary hearing to determine whether a basis exists for the exception to the time-bar to grant relief pursuant to section 99-39-5(2)(a)(ii)." This issue is without merit. *Pickle*, 115 So. 3d at 898 (¶9).

## II. DNA Testing and Exhumation

¶9. Pickle also argues that the circuit court's finding—that he was not entitled to DNA testing or an exhumation of Harthcock's body—is erroneous based on the prosecutor's misconduct at the evidentiary hearing, which violated his Fourteenth Amendment right to a fair evidentiary hearing. He asserts that the prosecutor was not cooperative with helping his court-appointed attorney find and manufacture new DNA evidence. Further, he asserts that the evidence was lost by the district attorney and the police and that they should have borne the burden of producing new evidence.

¶10. He also argues that, in the absence of the original DNA evidence, he should have been allowed to exhume Harthcock's body to check for DNA evidence that would have exonerated him. According to Pickle, the circuit court erred by accepting the medical examiner's opinions as fact when they were false, misleading, and based on speculation. He contends that the medical examiner's testimony—that there was no chance that DNA evidence would be recoverable for a body that had been buried so long—was erroneous and not based on factual evidence. Pickle further contends that there is contradictory evidence that DNA evidence can be recovered from a body after a number of years and the court erred by not allowing him to exhume the body. Finally, he argues that the medical examiner was not qualified to testify as to the condition of a body after being embalmed and buried because he

6

was not a mortician or embalmer.

¶11. The State responds that there was no evidence in the record as to which entity possessed the DNA evidence at the conclusion of Pickle's trial. The State argues that there was never an objection on the record that the district attorney or the police were not cooperative in efforts to locate the evidence; therefore, Pickle's argument is without merit. The State notes that the parties made a diligent effort to locate the evidence, but as thirty-seven-plus years had passed since his conviction, the evidence was simply not available, and there was no evidence to support intentional destruction of the evidence or negligence on the part of the State.

¶12. In response to Pickle's exhumation argument, the State argues that it is simply without merit. The State called Dr. Mark LeVaughn, the chief medical examiner for the State of Mississippi, who testified that "[t]here is absolutely no chance whatsoever that you would find vaginal DNA from someone else" on a body that has been embalmed, autopsied, and buried in a casket almost forty years. He also stated that "she would be skeletonized" and there would be no evidence to retrieve. The State argues that during the hearing on the issue, Pickle's counsel did not object to Dr. LeVaughn's testimony nor his entry as an expert. In addition, the State notes that Dr. LeVaughn is a licensed pathologist and medical examiner, with thirty years of experience, eminently qualified to testify about this issue. The State also notes that Pickle also did not offer any expert testimony to rebut Dr. LeVaughn's findings, nor did Pickle's attorney elicit any testimony on cross-examination to discount Dr. LeVaughn's testimony.

¶13. We agree with the State's arguments regarding this issue. It appears from the record

that the State and Pickle's counsel made a diligent effort to locate the missing DNA evidence despite the amount of time since Pickle's original conviction. As to the exhumation of Harthcock's body, Dr. LeVaughn, a qualified medical examiner, provided convincing testimony that it would be futile to exhume the body because no evidence would be garnered. Pickle offered no scientific expert testimony to support exhumation, based on his hypothesis that DNA evidence would still be present. The testimony from the State's expert and the lack of proof provided by Pickle—that DNA was recoverable from the body—support a finding that the probability of finding DNA through exhumation was remote, if not nonexistent. *See Rubenstein v. State*, 941 So. 2d 735, 781 (¶¶203-04) (Miss. 2006). Accordingly, this issue is without merit.

### III. Jury Instruction

¶14. In Pickle's related PCR motion, case number 2015-CP-00824-COA, he argues that the jury in his 1978 capital-murder conviction was not instructed as to any of the three essential elements of the underlying felony of attempted rape. He alleges that this is a fundamental due-process error that overrides the procedural bar present in his case. Pickle cites *Harrell v. State*, 134 So. 3d 266, 267 (¶2) (Miss. 2014), for the proposition that "the failure to instruct the jury as to the elements of the charged crime deprive[s] [the defendant] of due process in the form of his right to a jury trial as guaranteed by the Mississippi Constitution." He asserts that this constituted reversible error, entitling him to a new trial.

¶15. The State responds that this PCR motion is a successive writ, time-barred by virtue of the three-year statute of limitations, and this issue is barred by the doctrine of res judicata. The State further argues that there are no errors affecting a fundamental right, because the

jury was properly instructed. We agree; notwithstanding the successive nature of Pickle's current PCR motion or the expiration of the statute of limitations, this issue is barred by res judicata. "The doctrine of res judicata bars parties from litigating claims within the scope of the judgment in a prior action. This includes claims that were made or should have been made in the prior suit. Res judicata reflects the refusal of the law to tolerate a multiplicity of litigation." *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1084 (¶8) (Miss. 2009) (internal citations and quotations omitted). The doctrine of res judicata is applicable here because the jury-instruction issue has already been addressed by this Court in one of Pickle's previous PCR motions. In *Pickle*, 942 So. 2d at 246-47 (¶14), this Court stated:

> We have reviewed Pickle's PCR [motion] and conclude that it fails to substantially show any errors seriously affecting the fairness, integrity, or public reputation of judicial proceedings that would implicate plain error review. For illustrative purposes, we briefly discuss Pickle's main arguments. Concerning the jury instructions, Pickle contends that the instructions allowed his unconstitutional conviction of capital murder with the underlying felony of attempted rape when he had been indicted for capital murder with the underlying felony of rape. Pickle argues that by charging him with the completed crime of rape, his indictment did not properly charge him with attempted rape. This argument is clearly without merit; Mississippi Code Annotated section 99-19-5 (Rev. 2000) provides that a jury may find the defendant guilty of the offense charged in the indictment or of any attempt to commit the same offense. Further, contrary to Pickle's arguments, he was not found guilty of the predicate felony of rape upon improper jury instructions because the jury was correctly instructed on the elements of rape as the crime was statutorily defined at the time of Pickle's offense.

¶16.    Accordingly, this issue is without merit.

¶17.    **THE JUDGMENTS OF THE CIRCUIT COURT OF LEFLORE COUNTY DISMISSING THE MOTIONS FOR POST-CONVICTION RELIEF ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**